IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED ACCELERATOR APPLICATIONS USA, INC. and ADVANCED ACCELERATOR APPLICATIONS SA,<br><br>Plaintiffs,<br><br>v.<br><br>CURIUM US LLC, CURIUM US HOLDINGS LLC, CURIUM NETHERLANDS BV, CURIUM INTERNATIONAL TRADING BV, and MAARTEN DE JONG,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 26-59 (MN)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

Daneil M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Jane M. Love, Ph.D., Robert Trenchard, Emil N. Nachman, Yi Zhang, GIBSON, DUNN & CRUTCHER LLP, New York, NY; Andrew P. Blythe, Anne Y. Brody, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA – Attorneys for Plaintiffs

Kelly E. Farnan, Sara M. Metzler, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Keith A. Orso, Andrew E. Krause, Abigail L. Sellers, Sarah M. Van Voorhis, Gregroy V. Albano, IRELL & MANELLA LLP, Los Angeles, CA – Attorneys for Maarten de Jong

February 17, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court are two motions: Defendant Maarten de Jong's motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure (D.I. 78) and Advanced Accelerator Applications SA and Advanced Accelerator Applications USA's (together, "Plaintiffs") motion to sever and transfer the trade secret-related claims in this action to the United States District Court for the Eastern District of Missouri (D.I. 108). For the following reasons, the Court will DENY both motions.

**I.      BACKGROUND**

This dispute began as patent infringement action under the Hatch-Waxman Act but has since sprung several claims related to alleged misappropriation of trade secrets, which this Court has severed into a separate action. (D.I. 392; D.I. 401). The motions presently before this Court implicate only these trade secret-related claims.

On October 17, 2024, Plaintiffs filed their initial complaint, alleging that a new drug application filed by Curium US LLC, Curium US Holdings LLC, Curium Netherlands BV, and Curium International Trading BV ("the Curium Defendants") infringed several of Plaintiffs' patents. (C.A. No. 24-1161 (MN), D.I. 1). On December 13, 2024, Plaintiffs filed an Amended Complaint in which they added trade secret-related claims for alleged violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450 et seq., and – because those claims allegedly arise from a contractual relationship – breach of contract, breach of the covenant of good faith and fair dealing, and conversion. (D.I. 28 Counts XIII-XVII). All of these trade secret-related claims were asserted against the Curium Defendants, and two of these claims – violation of the Defend Trade Secrets Act and conversion – were asserted against a new defendant, Marteen de Jong, a retired former employee of Curium Netherlands BV. (*Id.*).

1

This Court held a bench trial on the patent infringement claims from December 15 through December 19, 2025.[1] After trial, this Court granted the parties' joint stipulation to sever the patent infringement claims from the trade secret-related claims.[2] (D.I. 392; D.I. 401). Trial has not yet been held on the trade secret-related claims.

This Court now addresses the following motions. First, on April 9, 2025, Defendant de Jong moved to dismiss the claims against him, contending that he is not subject to the personal jurisdiction of this Court. (D.I. 78). Second, on May 7, 2025, Plaintiffs moved to transfer all trade secret-related claims to the Eastern District of Missouri. (D.I. 108). Both motions are opposed and have been fully briefed. (D.I. 79; D.I. 106; D.I. 109; D.I. 130; D.I. 132; D.I. 136).

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

When faced with a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence." *Turner v. Prince Georges Cnty. Pub. Schs.*, 694 Fed. App'x 64, 66 (3d Cir. 2017). "When a factual challenge is presented" by a Rule 12(b)(2) motion, "[t]he court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction." *Weiss v. e-Scrub Sys., Inc.*, No. CV 13-710-GMS, 2014 WL 4680866, at *6 (D. Del. Sept. 19, 2014). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.

---

[1] The bench trial also included claims in a related case pending before this Court, C.A. No. 24-95 (MN).

[2] The patent infringement claims are proceeding in C.A. No. 24-1161 (MN), and the trade secret-related claims are proceeding in C.A. No. 26-59 (MN).

2

2004) (citing *Pinker v. Roche Hldgs., Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)); *see Ngambo v. New York State Dep't of Tax'n & Fin.*, No. 24-2545, 2025 WL 1650011, at *2 (3d Cir. June 11, 2025).

    B.    <u>**Severance and Transfer**</u>

Rule 21 provides that the Court may "sever any claim against a party." "Questions of severance are addressed to the broad discretion of the district court." *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2019 WL 1765224, at *3 (D. Del. Apr. 22, 2019) (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1689, at 515-16 (3d ed. 2001)).

Transfer of severed claims is generally governed by 28 U.S.C. § 1404(a), which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." District courts are vested "with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

### III.    DISCUSSION

    A.    <u>**Personal Jurisdiction**</u>

Plaintiffs rely on Rule 4(k)(2) of the Federal Rules of Civil Procedure to establish this Court's jurisdiction over Defendant de Jong. That rule provides:

> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
>     (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
>     (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Under Rule 4(k)(2), a federal court may exercise personal jurisdiction over a defendant if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, No. CV 18-1869-CFC-CJB, 2020 WL 229993, at *4 (D. Del. Jan. 15, 2020) (Burke, Mag. J.) (citation omitted), *report and recommendation adopted,* No. CV 18-1869-CFC/CJB, 2020 WL 564935 (D. Del. Feb. 5, 2020) (Connolly, J.).

### 1. Claim Arises Under Federal law

As noted above, Plaintiffs bring two claims against Defendant de Jong. One of those, a claim under 18 U.S.C. § 1836, clearly arises under federal law and meets the first requirement of Rule 4(k)(2).[3]

### 2. Not Subject to Jurisdiction in Any State

Rule 4(k)(2) requires that "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." The parties' positions on this issue leave much to the imagination. Plaintiffs have not attempted to show that state courts lack jurisdiction,[4] and Defendant de Jong has not admitted that he is subject to jurisdiction in any state. (D.I. 79; D.I. 106; D.I. 130).

---

[3] Plaintiffs ask this Court to exercise supplemental jurisdiction over the state law claim. (D.I. 106 at 9). *See* 28 U.S.C. § 1367(a). The Court will do so. The Amended Complaint is clear that both the federal and state claims at issue share a "common nucleus of operative fact" – the alleged misappropriation of confidential information learned during a business collaboration. (D.I. 28 Counts XIII, XVII). *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003). And Defendant de Jong makes no attempt to distinguish the factual predicates for the claims. (D.I. 79 at 3, 17). The parties' arguments, however, on whether this exercise of supplemental jurisdiction is sufficient to confer personal jurisdiction over Defendant de Jong on this count are sparse. In the absence of more defined arguments, the Court assumes personal jurisdiction exists over this count as well. *See Doe v. Webgroup Czech Republic, A.S.*, 93 F.4th 442, 450 n.5 (9th Cir. 2024).

[4] Initially, Plaintiffs took the contradictory position that Missouri had jurisdiction over Defendant de Jong in support of their motion to transfer the trade secret-related claims in

4

This case thus implicates an unsettled question of law in this Circuit – whether plaintiffs or defendants bear the burden of proving or disproving the availability of state court jurisdiction under Rule 4(k)(2). Most federal circuit courts faced with this issue have placed the burden on the defendant. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414-15 (Fed. Cir. 2009) (agreeing with the Fifth, Seventh, Ninth, Eleventh and D.C. Circuits that the burden should be placed on the defendant)[5]; *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (agreeing with the majority approach). Other circuits have placed the burden to some degree on the plaintiff. *See Touchcom*, 574 F.3d at 1414 (explaining the divergent approaches in the First and Fourth Circuits). Courts in this District have likewise taken different approaches. *See, e.g., Bos. Sci. Corp.*, 2020 WL 229993, at *6 (placing the burden on the defendant); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. CIV.A. 03-612-KAJ, 2004 WL 2346137, at *5 (D. Del. Sept. 13, 2004) (citing Seventh Circuit majority approach); *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 524 (D. Del. 2016)

---

this action to the Eastern District of Missouri. (D.I. 106 at 1; D.I. 109 at 7-11). This complicated the burden-shifting analysis herein (*see supra* at 5-6) because it is arguably an open question whether Plaintiffs' contradictory positions relieve Defendant de Jong of his burden to identify an available state court jurisdiction.

At a teleconference with counsel for all parties on November 21, 2025, however, the Court stated that it was "not transferring the rest of the case" against the Curium Defendants and asked Plaintiffs' counsel whether he would still prefer to try the case against Defendant de Jong in Missouri. (D.I. 351 at 18:12-19). Plaintiffs' counsel responded that the Court should "not do that" and should "keep the case together" in this District. (*Id.* at 18:20-19:3). Thus, because this Court is not transferring the claims against the Curium Defendants, Plaintiffs have withdrawn their argument that the claims against Defendant de Jong should be transferred because Missouri courts have jurisdiction over him.

[5]    Because the claims under consideration here are trade secret, not patent, in nature, the Federal Circuit's approach to personal jurisdiction is persuasive but not binding on this Court. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1336 (Fed. Cir. 2013) ("This court reviews the issue of personal jurisdiction with respect to non-patent claims under the law of the regional circuit.").

(placing the burden on the plaintiff to make "an affirmative representation that the defendant is not subject to the general jurisdiction of any state court").

Consistent with the prevailing approach among federal circuit courts, this Court holds that "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) (citation omitted). This is no great burden on the defendant, who need only "name some other state in which the suit could proceed" to preclude the use of Rule 4(k)(2). *ISI Int'l, Inc. v. Borden Ladner Gervias LLP*, 256 F.3d 548, 552 (7th Cir. 2001). The alternative approach "would saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over,' that is, demonstrating that the defendant is *not* subject to jurisdiction in each of the fifty states." *Merial Ltd.*, 681 F.3d at 1294 (quoting *Touchcom,* 574 F.3d at 1413). And even a hybrid approach – such as requiring the plaintiff to certify that no state court could exercise jurisdiction before shifting the burden to the defendant – would awkwardly prohibit plaintiffs from pleading jurisdiction in the alternative under Rule 4(k)(1)(A) and Rule 4(k)(2). *See Touchcom,* 574 F.3d at 1415.

Here, then, the second requirement of Rule 4(k)(2) is met because Defendant de Jong has not submitted to jurisdiction in any U.S. state.

### 3. Jurisdiction Comports with Due Process

The final consideration under Rule 4(k)(2) is a familiar one: whether the defendant's contacts with the forum are sufficient to satisfy the jurisdictional requirements inherent in the Due Process Clause of the U.S. Constitution. *Bos. Sci. Corp.*, 2020 WL 229993, at *4. This is the typical "minimum contacts" analysis for specific personal jurisdiction, except that the analysis under Rule 4(k)(2) considers the defendant's contacts with the entire United States as opposed to with an individual state. *Id.* This Court must therefore address (1) whether Defendant de Jong has

"purposefully availed himself of the privilege of conducting activities within" the U.S.; (2) whether the claims against him "arise out of or relate to" his U.S. contacts; and (3) and whether asserting jurisdiction over him "comport[s] with fair play and substantial justice." *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

In support of jurisdiction, Plaintiffs rely on two broad categories of factual allegations. ***First***, Plaintiffs allege that Defendant de Jong was a "key participant" in a collaboration between predecessor companies to Plaintiffs and the Curium Defendants, during which the companies exchanged the alleged trade secrets at issue in this case. (D.I. 28 ¶¶ 19, 26, 73-74, 86). ***Second***, Plaintiffs allege that after the collaboration, Defendant de Jong and the Curium Defendants used those trade secrets to develop and market a pharmaceutical product "intended for the U.S. market." (*Id.* ¶¶ 20, 23, 27, 87).

In this opinion, the Court will consider only the first category of jurisdictional allegations, which are largely undisputed. The second category of allegations are hotly contested, with the parties' submitting competing evidence – including an affidavit from Defendant de Jong and records of email correspondence. (D.I. 80; D.I. 137 Exs. 18-21). Though Plaintiffs need only make a prima facie case in the absence of an evidentiary hearing, this Court believes it would be unwise to reach a conclusion on these disputed allegations in the absence of such a hearing.[6] *See Miller Yacht Sales*, 384 F.3d at 97.

### 4. Purposeful Availment

For this Court to exercise jurisdiction, Defendant de Jong must have "deliberately reached out" to the U.S. to create substantial forum-related contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014))

---

[6] In turn, this Court will not address Plaintiffs' "effects" theory of jurisdiction that relies on *Calder v. Jones*, 465 U.S. 783 (1984).

7

(internal quotations removed).  Plaintiffs rely on Defendant de Jong's participation in a collaboration between BioSynthema (a U.S.-based predecessor company to Plaintiffs) and Byk-Mallinckrodt CIL B.V. ("Mallinckrodt") (a Netherlands-based predecessor company to Defendant Curium) that took place from 2006 to 2010.  (D.I. 28 ¶¶ 5-6, 27, 30).  This collaboration is central to Plaintiffs' theory of the case.  Around 2000, Dr. Jack Erion founded BioSynthema, a company based in St. Louis, to work on what would become a novel radiopharmaceutical treatment called Lutathera.  (*Id.* ¶¶ 4, 38).  In 2006, BioSynthema began the collaboration at issue with Mallinckrodt to commercialize the product, and the two companies entered into agreements that barred Mallinckrodt from independently using confidential information it learned from the collaboration. (*Id.* ¶¶ 5-6, 39, 71).  The companies formally terminated their relationship in 2010, after which Plaintiffs acquired BioSynthema (in 2010), and the Curium Defendants acquired Mallinckrodt's radiopharmaceutical business (in 2016).  (*Id.* ¶¶ 6, 8, 11).  Thereafter, the Curium Defendants allegedly set about developing a facsimile product to Lutathera using trade secrets obtained from the collaboration.  (*Id.* ¶¶ 8, 92).

Plaintiffs allege that Defendant de Jong – an employee for Mallinckrodt at the relevant time – was a "central player" in this collaboration.  (*Id.* ¶ 73).  He was Mallinckrodt's designated "project manager" for the collaboration, on the project's "Steering Committee," and worked with Dr. Erion (who at all relevant times resided in the U.S.) "to develop the analytical methods for measuring stability and purity."  (*Id.*).  The collaboration was "constant, with at least weekly and often daily communications and meetings for three years."  (*Id.* ¶ 72).  Among other things, Defendant de Jong allegedly engaged in "countless telephone and email communications" with BioSynthema in the U.S.; received samples shipped from BioSynthema; learned of trade secrets from interactions with BioSynthema employees (including information related to "complexation

8

purity," "analytical methods," and "confidential clinical trial data"); and otherwise engaging in frequent contact with U.S.-based BioSynthema personnel for multiple years. (*Id.* ¶¶ 26, 74). Plaintiffs also provide copies of emails that Defendant de Jong sent to Dr. Erion in 2007 and 2008, where the two appear to exchange detailed information related to drug development. (D.I. 107 Exs. 4-7).

Defendant de Jong does not seriously contest most of these allegations. Rather, he takes issue with the sufficiency of the alleged contacts, and emphasizes that he was a citizen of the Netherlands who is not alleged to have set foot in the U.S. (D.I. 130 at 4-6). Although a defendant's physical presence in a forum is a meaningful contact, it is "not a perquisite to jurisdiction," and "deliberate targeting of the forum" will suffice. *Walden*, 571 U.S. at 285; *O'Connor*, 496 F.3d at 317.

Other courts have exercised jurisdiction over less than what is alleged here. In *O'Connor*, for instance, the Third Circuit determined that a district court in Pennsylvania properly exercised jurisdiction over a hotel located in Barbados, even where the injury at issue occurred during a massage at the hotel. 496 F.3d at 318. The Court emphasized that the hotel had "deliberately reached into Pennsylvania to target two of its citizens" through various communications, which included mailing a brochure, trading phone calls with the Pennsylvania-based plaintiffs after they booked spa services, and continuing to mail the plaintiffs seasonal newsletters after the massage. *Id.*[7]

---

[7] Defendant de Jong protests that this case was decided before *Walden v. Fiore* and thus lacks precedential value. (D.I. 130 at 8). Yet this Court cannot discern any legal analysis in *O'Conner* that is inconsistent with *Walden*, and the Third Circuit has continued to cite *O'Conner* with approval in the years since *Walden*. *See, e.g.*, *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020).

A more factually analogous case is *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, No. 2:15-CV-00965, 2020 WL 1526940 (W.D. Pa. Mar. 31, 2020). There, a company sued a competitor company and certain individuals for allegedly colluding to misappropriate its proprietary technology and confidential information. *Id.* at *1. The court exercised jurisdiction over the defendants despite their lack of physical presence in Pennsylvania, relying largely on the defendants' wire transfers to a Pennsylvania-based bank account and emails to Pennsylvania-based individuals in furtherance of the misappropriation. *Id.* at *6-*9.

Defendant de Jong attempts to distinguish *PPG* and other trade secret-related cases on the ground that he was not "planning to misappropriate any alleged trade secrets" during the collaboration. (D.I. 130 at 5-6). This argument conflates jurisdiction with wrongdoing. It may be that Defendant de Jong had entirely innocent motives at the time of the collaboration, but the question here is one of contacts.[8] For instance, in *O'Conner* the Third Circuit did not require defendants to have sent the brochures with the goal of harming the recipients. 496 F.3d at 318.

Defendant de Jong also attempts to characterize his contacts with the U.S. as passing accidents. He claims that he was merely "exposed to information" from a company that "happens to be domiciled in the U.S." in "the normal course of his employment with a foreign company." (D.I. 130 at 4, 6). But this does not square with the uncontested facts in the Amended Complaint, which describes Defendant de Jong's years-long leadership role in an extensive collaboration with U.S.-based employees of a U.S.-based company. (D.I. 28 ¶¶ 26, 73). Defendant de Jong's contacts with the U.S. were not "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286.

---

[8] Though wrongful intent may play a minor role in jurisprudence on specific personal jurisdiction (perhaps under the "fair play and substantial justice" prong), it does not reduce the extensive contacts that Plaintiffs have shown here.

          a.        **Arise Out Of or Relate To**

Plaintiffs must further establish that this action "arise[s] out of or relate[s] to" Defendant de Jong's contacts with the U.S., which requires "a strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co.*, 592 U.S. at 353 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)). That standard is satisfied here. Defendant de Jong was allegedly intimately involved in a collaboration with a U.S. company where trade secrets were exchanged, giving rise to the trade secret-related claims in this action.

Plaintiffs note that the collaboration occurred "more than 15 years ago" and "more than a decade before any alleged misappropriation." (D.I. 130 at 4, 6). But this does little to break the intimate connection alleged here between the defendant, the forum, and the litigation. And though a time lapse may have some bearing on the fairness considerations addressed below, it does not vitiate this Court's jurisdiction. It was, or should have been, foreseeable to Defendant de Jong that litigation related to his years-long collaboration with U.S.-based employees of a U.S.-based company would occur in the U.S.

          b.        **Fair Play and Substantial Justice**

To prevent this Court's exercise of personal jurisdiction, Defendant de Jong bears the burden of establishing that exercising jurisdiction would not comport with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The Supreme Court has identified five relevant considerations: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (citation omitted).

This is not one of the "rare cases" in which considerations of fair play and substantial justice defeat jurisdiction. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998). Most of the *Burger King* considerations counsel in favor of exercising jurisdiction. The U.S. has a significant interest in protecting trade secrets allegedly misappropriated from U.S. companies. The most efficient resolution of the case against Defendant de Jong is in this Court, where similar trade secret-related claims are pending against the Curium Defendants. And though Defendant de Jong may have to travel from the Netherlands to Delaware to appear at trial, without additional information before this Court the journey does not appear to be particularly burdensome.

Only the third factor appears to weigh against exercising jurisdiction. Though Plaintiffs maintain that they must name Mr. de Jong as a defendant to secure comprehensive injunctive relief, counsel for Defendant de Jong has stated that he is retired and would agree to be contractually bound by any judgment. (D.I. 230 at 9:5-9, 12:13-14; D.I. 351 at 6:12-17). There seems to be a dispute among the parties about whether a Dutch court or U.S. court should enforce any such contractual obligations. (D.I. 350 at 6:11-22, 9:20-23, 15:17-21). Regardless, the necessity of asserting claims against Defendant de Jong is not entirely clear to this Court.

Overall, despite the weight of the third *Burger King* factor, this Court concludes that the remaining circumstances of this case warrant exercising jurisdiction over Defendant de Jong.

### B. Plaintiffs' Motion to Sever and Transfer

Shortly after Defendant de Jong moved to dismiss, Plaintiffs moved to sever and transfer the trade secret-related claims in this case to the U.S. District Court for the Eastern District of Missouri in St. Louis under 28 U.S.C § 1404. (D.I. 108). As the trade secret-related claims have since been severed into a standalone action before this Court, only the issue of transfer remains. (D.I. 401).

Questions of transfer are subject to this Court's "broad discretion." *Jumara*, 55 F.3d at 883. "In ruling on § 1404(a) motions [to transfer], courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Id.* at 879 (quoting 15 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3847 (2d ed. 1986)).

Plaintiffs' stated reasons for transfer are unpersuasive. Plaintiffs first contend that St. Louis is the "center of gravity" for the dispute over the trade secret-related claims and thus would be more convenient for parties and witnesses. (D.I. 109 at 1, 13). Although some witnesses may have to travel from St. Louis to Boston, this is not sufficient reason to transfer a case that was filed in this Court and has been pending here for over a year. Plaintiffs also highlight that certain claims and contracts at issue are governed by Missouri law. (*Id.* at 15-16). But this Court is competent to evaluate Missouri law. Plaintiffs further argue that jurisdiction could be more easily established over Defendant de Jong in Missouri, which would alleviate this Court from having to decide thorny issues under Rule 4(k)(2). (*Id.* at 16). But this Court has determined that it has jurisdiction over Defendant de Jong.

More importantly, transfer at this point would be deeply inefficient, and thus at odds with the "interest[s] of justice." *See* 28 U.S.C § 1404(a). Plaintiff did not move to transfer until more than six months after filing the initial complaint in this action – with Plaintiffs' only stated reason for delay being the jurisdictional issue that this Court has now resolved. (D.I. 109 at 1). It is now

even farther into the case, and trial has been held on the patent claims at issue. It makes little sense to start from scratch in another court.

Defendants also deserve reasonably swift adjudication of the claims against them. The Curium Defendants aver that they provided discovery on favorable terms to Plaintiffs partly in exchange for an expedited trial. (D.I. 132 at 2). Further, the parties' agreed-upon Protective Order does not contemplate production of documents for use in another forum. (D.I. 76).

For these reasons, this Court will deny Plaintiffs' motion to sever and transfer the trade secret-related claims in this action.

## IV. CONCLUSION

For the reason set forth above, the Court will deny Defendant de Jong's motion to dismiss (D.I. 78) and Plaintiffs' motion to sever and transfer (D.I. 108). An appropriate order will follow.